UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
GREGORY WARREN,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     15-CV-2829(JS)(AKT)

ROBERT FISCHL; CAROLYN M. GENOVESI;
A.D.A. JOHN J. MCKENNA; A.D.A. JAMES
R. WATSON; A.D.A. ANDREA M. DIGREGORIO;
MARY BIUNNO; NASSAU COUNTY DISTRICT
ATTORNEY'S OFFICE; NASSAU COUNTY COURT
JUDGE MERYLE BERKOWITZ; ZELDA JONAS;
PAUL KOWTNA; NASSAU COUNTY COURT JUDGE
DAVID P. SULLIVAN; NASSAU COUNTY COURT
JUDGE ALLEN L. WINICK; NASSAU COUNTY
COURT JUDGE KAREN V. MURPHY; NASSAU
COUNTY COURT; DARIN POOLE, C.I. NO.
71-91; DET. LAURETTE KEMP, Sh. No. 737;
DET. ANTHONY SORRENTINO, Sh. No. 728;
DET. GEORGE LUDWIG, Sh. No. 701; DET.
SGT. HINCHMAN, Sh. No. Unknown; NASSAU
COUNTY POLICE DEPARTMENT; MATHEW MURASKIN,
NASSAU COUNTY LEGAL AID SOCIETY; and
NASSAU COUNTY, in their individual and
official capacities,

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:      Gregory Warren, pro se
                    1160 Teller Avenue
                    Bronx, NY 10456

For Defendants:     No appearances.

SEYBERT, District Judge:

          On May 12, 2015, pro se plaintiff Gregory Warren

("Plaintiff") filed an in forma pauperis Complaint in this Court

pursuant to 42 U.S.C. § 1983 ("Section 1983") and 18 U.S.C. § 1961

et seq. ("RICO") against A.D.A. Robert Fischl ("A.D.A. Fischl");

Carolyn M. Genovesi ("A.D.A. Genovesi"); A.D.A. John J. McKenna

("A.D.A. McKenna"); A.D.A. James R. Watson ("A.D.A. Watson); A.D.A. Andrea M. DiGregorio ("A.D.A. DiGregorio"); A.D.A. Mary Biunno ("A.D.A. Biunno"); Nassau County District Attorney's Office ("NCDA Office"); Nassau County Court Judge Meryle Berkowitz ("Judge Berkowitz"); Hon. Zelda Jonas ("Judge Jonas"); Hon. Paul Kowtna ("Judge Kowtna"); Nassau County Court Judge David P. Sullivan ("Judge Sullivan"); Nassau County Court Judge Allen L. Winnick ("Judge Winnick"); Nassau County Court Judge Karen V. Murphy ("Judge Murphy"); Nassau County Court ("County Court"); Darin Poole, C.I. No. 71-91 ("Poole"); Det. Laurette Kemp, Sh. No. 737 ("Det. Kemp"); Det. Anthony Sorrentino, Sh. No. 728 ("Det. Sorrentino"); Det. George Ludwig, Sh. No. 701 ("Det. Ludwig"); Det. Sgt. Hinchman, Sh. No. Unknown ("Det. Ludwig"); Nassau County Police Department ("NCPD"); Mathew Muraskin ("Muraskin"); Nassau County Legal Aid Society ("Legal Aid"); Nassau County ("the County" and collectively, "Defendants"), accompanied by an application to proceed in forma pauperis. Plaintiff seeks to sue all of the Defendants in their individual and official capacities.

Upon review of the declaration in support of the application to proceed in forma pauperis, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED. However, for the reasons that follow, the Complaint is sua sponte

DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)
(ii)-(iii).

BACKGROUND[1]

Plaintiff's Complaint seeks to challenge Plaintiff's
September 23, 1992 arrest, and the manner in which Defendants
secured his grand jury indictment, conviction, and sentence.  The
gravamen of the Complaint is that Defendants knew or should have
known that perjured testimony was used to prosecute Plaintiff.
Thus, Plaintiff claims that his Fourth, Fifth, Sixth, and
Fourteenth Amendment rights were violated and further claims that
Defendants conspired to violate his rights under the Racketeer
Influenced and Corrupt Organizations Statute, 18 U.S.C. § 1961 et
seq. ("RICO").  For relief, Plaintiff seeks to recover a monetary
damages award in excess of $1 billion.

PROCEDURAL HISTORY

Plaintiff is no stranger to this Court.  This is
Plaintiff's second attempt to litigate these claims in this Court
against many of the same Defendants.  See Warren v. A.D.A. Fischl,
et al., 96-CV-3387 ("Warren I").[2]  In addition, Plaintiff filed an

_____

[1] The following facts are taken from Plaintiff's Complaint and
are presumed to be true for the purpose of this Memorandum and
Order.

[2] Plaintiff sued A.D.A. Robert Fischl, A.D.A. Carolyn M.
Genovesi, A.D.A. David P. Sullivan, D.A. Denis Dillon, District
Attorney's Office of Nassau County, Darin Poole C.I. No. 71-91,
Det. Laurette Kemp Sh. No. 737, Det. Anthony Sorrentino Sh. No.
728, Det. George Ludwig Sh. No. 701, Det. Sgt. Hinchman Sh. No.

unsuccessful Petition for a Writ of Habeas Corpus challenging the same conviction that is the subject of the present Complaint. See Warren v. Kelly, 99-CV-4226(ADS) ("Warren II"). By Memorandum of Decision and Order dated June 16, 2002, Judge Spatt denied the Petition because it was time-barred. See Warren v. Kelly, 207 F. Supp. 2d 6 (E.D.N.Y. 2002). Warren appealed and, by Order dated March 25, 2003, the appeal was dismissed because it was untimely filed. (See Warren II at Docket Entry No. 20.) On February 6, 2007, Warren filed another Petition for a Writ of Habeas Corpus challenging this conviction. See Warren v. Payant, 07-CV-0540(JS) ("Warren III"). By Order dated March 7, 2008, this Petition was transferred to the Second Circuit Court of Appeals as a Successive Petition and, by Mandate dated April 22, 2009, it was denied. (See

_____

Unknown, Nassau County Police Department, the County of Nassau, Meryl Berkowitz, Mathew Muraskin, the Legal Aid Society of Nassau County, Thomas Gulotta, and Nassau County. By Memorandum and Order dated January 9, 1999, District Judge Arthur D. Spatt granted the Motion to Dismiss brought by the Legal Aid Society of Nassau County, Mathew Muraskin, and Meryl Berkowitz. (See Warren I Docket Entry 131; Warren v. Fischl, 33 F. Supp. 2d 171 (E.D.N.Y. 1999)). By Order dated September 26, 2000, District Judge Charles R. Wolle, sitting by designation, granted the remaining Defendants' Motion for Summary Judgment dismissing the balance of the complaint in its entirety. (See Warren I Docket Entry 185.) Plaintiff appealed the Order granting summary judgment and, by Mandate dated January 23, 2001, the appeal was dismissed. (See Warren I Docket Entry 189.) Given Warren I, many of Plaintiff's claims in the instant case are barred by res judicata and/or collateral estoppel. However, because adjudication of Plaintiff's claims is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), see infra at 12-17, the Court need not reach this alternate basis for dismissal.

<u>Warren III</u> at Docket Entries 15 and 16.)

Warren also filed an unsuccessful application for a Writ of Error Corum Nobis seeking to vacate, on the ground of ineffective assistance of counsel, the Appellate Division's October 12, 1996 decision (<u>People v. Warren</u>, 232 A.D.3d 589, 648 N.Y.S.2d 670 (2d Dep't 1996)) modifying Warren's judgment of conviction rendered on June 20, 1994 in the County Court, Nassau County. <u>People v. Warren</u>, 23 A.D.3d 589, 804 N.Y.S.2d 263 (2d Dep't 2005).

FACTS

As noted above, Plaintiff again seeks to challenge his 1992 arrest and the manner in which the District Attorney's Office, the individual assistant district attorneys, police officers, and the Nassau County Police Department secured his grand jury indictment, conviction, and sentence. Plaintiff further seeks to challenge the conduct of the state court judges who presided over his underlying criminal proceedings, the Nassau County Court and Court Clerk, as well as his criminal defense attorney and the Nassau County Legal Aid Society.

More specifically, Plaintiff alleges that he was unlawfully arrested on September 23, 1992 and that his premises were unlawfully searched at the time of his arrest. (Compl. ¶¶ 27-28.)[3] Plaintiff claims, in conclusory fashion, that on October 28,

---

[3] Plaintiff's allegations have been reproduced here exactly as they appear in the Complaint. Errors in spelling, punctuation, and grammar have not been corrected or noted.

1992 "Poole, Kemp, Ludwig, Fischl, Watson and McKenna, did knowingly and willfully explicitly/tacitly agree amongst themselves to fabricate Poole, Kemp, and Ludwig's testimony . . . and evidence and presented it to the Grand Jury ("GJ") to unlawfully secure an indictment to prosecute Plt on a false predicate . . . ." (Compl. ¶ 29.)  Plaintiff claims that Fischl called Poole, Kemp, and Ludwig to testify falsely at the grand jury proceeding and that they falsely claimed to have purchased cocaine from Plaintiff on several occasions. (Compl. ¶¶ 30-31.)  According to Plaintiff, Ludwig also falsely claimed to have observed Plaintiff in possession of, <u>inter alia</u>, a "9 millimeter semi-automatic Taurus pistol" as well as "packets of white powdery substance . . . cocaine." (Compl. ¶ 31.)

Plaintiff alleges that the grand jury indicted him, but asserts that the indictment was not signed by the foreman and was thus invalid.  (Compl. ¶ 32.)  Plaintiff claims that, in March 1994, Jonas, Kowtna, Winick, Genovesi, Sullivan, Berkowitz, and Ludwig agreed to "fabricate a search warrant for Plt's premises to conceal the fact that NCPD did not have said warrant when they entered and searched Plt's premises . . ." and "falsely indicating same was issued on 09/22/92." (Compl. ¶¶ 35-36.)  Plaintiff next claims that, in March 1994, Poole, Kemp, Sorrentino, Ludwig, Genovesi, Sullivan, and Berkowitz "agree[d] amongst themselves to doctor audio tapes adding Kemp's voice to said tapes . . . for the purpose of presenting them to, and misleading, the Trial Jury."

(Compl. ¶ 37.) Plaintiff also alleges that Poole, Kemp, Sorrentino, Ludwig, Sullivan, Kowtna, and Berkowitz agreed amongst themselves to introduce false witness testimony against Plaintiff at trial. (Compl. ¶ 38.) Plaintiff further claims that tape recordings of Plaintiff's telephone calls were "doctored" and used against him at trial. (Compl. ¶¶ 38-40.)

On April 21, 1994, a jury convicted Warren of Criminal Possession of a Controlled Substance in the First Degree, three counts of Criminal Sale of a Controlled Substance in the Third Degree, six counts of Criminal Possession of a Controlled Substance in the Third Degree, three counts of Criminal Possession of a Controlled Substance in the Fourth Degree, and three counts of Criminal Possession of a Weapon in the Third Degree. See Warren, 207 F. Supp. 2d at 8. Plaintiff appealed the judgment of conviction claiming that the "trial court erred in refusing to charge that the defendant must know the weight of the controlled substance as an element of the crime of criminal possession of a controlled substance in the first and fourth degrees." People v. Warren, 232 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dep't 1996). The Appellate Division agreed, and ruled that "the People were required to prove beyond a reasonable doubt that the defendant had knowledge of both the possession of the substance and the weight." Id. at 590. Accordingly, the Court reversed Warren's convictions of Criminal Possession of a Controlled Substance in the fourth degree

7

under counts three, six and nine of the indictment, Criminal Possession of a Controlled Substance in the third degree under count eleven on the indictment, and Criminal Possession of a Controlled Substance in the first degree under count twelve of the indictment, vacated the sentences imposed thereon, and remitted the case for a new trial as to those counts. Id. at 589-90; see also Compl. ¶ 41. The judgment of conviction on the remaining counts was affirmed. Warren, 232 A.D.2d at 589.

According to the Complaint, on February 4, 1997, Plaintiff's court assigned defense attorneys agreed with the District Attorney, the Nassau County Police Department, Nassau County, and the Nassau County Court that the remitted charges against Plaintiff would be dismissed in an effort to prevent Plaintiff from presenting his "newly discovered, suppressed evidence proving the Defs founded and rested their case on fabricated evidence . . . ." (Compl. ¶ 43.) Plaintiff alleges that in August 2000, several Defendants agreed that they would present false evidence in Federal Court (presumably in Warren I) including: (1) that there was a warrant for the search of Plaintiff's home prior to his arrest; (2) that none of the Defendants colluded to prosecute Plaintiff illegally; (3) that none of the Defendants were involved in a conspiracy to prosecute Plaintiff; and (4) the fraudulent audio tapes presented in the underlying criminal trial. (Compl. ¶¶ 44-48.) Plaintiff also

claims that, in 2005 and 2011, false evidence was submitted by several Defendants in opposition to Plaintiff's C.P.L. §§ 440.10 and 440.46 motions.  (Compl. ¶¶ 49-51.)

As a result of the foregoing, Plaintiff alleges seven causes of action.  First, Plaintiff claims that his Fourth Amendment Right to be free from unreasonable searches and seizures was violated when, in 1992 and without a warrant, the police searched his home and he was arrested.  (Compl. ¶¶ 61-62.)  Second, Plaintiff alleges that his Fifth Amendment Right to testify in his own behalf was violated when he was denied the opportunity to testify during his trial in 1994.  (Compl. ¶¶ 63-64.)  Third, Plaintiff alleges that he was denied the effective assistance of counsel in violation of his Sixth Amendment Right when his attorneys conspired with law enforcement personnel to: (1) search Plaintiff's home and arrest him in 1992; (2) secure Plaintiff's indictment based on fabricated evidence in 1992; (3) prosecute Plaintiff on false evidence and without jurisdiction in 1994; (4) falsely incriminate Plaintiff in 1994; (5) deny Plaintiff the right to testify on his own behalf in 1994; (6) deny Plaintiff the right to present favorable and exculpatory evidence in 1994; (7) secure Plaintiff's conviction with fabricated evidence from 1994 through 2011; (8) secure and maintain Plaintiff's imprisonment with fabricated evidence from 1994 through 2011; (9) suppress exculpatory evidence from 1994 through 2011; and (10) destroy

exculpatory evidence from 1994 through 2011. (Compl. ¶ 66.)
Plaintiff's fourth, fifth and sixth causes of action allege that
his Fourteenth Amendment Due Process Rights were violated when, in
1994: (1) he was prosecuted without "a valid grant of subject-
matter jurisdiction" (Compl. ¶¶ 67-68); (2) he was denied his right
to a fair trial (Compl. ¶¶ 69-70); and (3) he was prevented from
introducing favorable evidence at trial (Compl. ¶¶ 71-72).
Finally, Plaintiff's seventh cause of action alleges that the
Defendants violated the RICO statute when they conspired to
unlawfully prosecute and imprison him. (Compl. ¶¶ 73-74.) For
relief, Plaintiff seeks to recover a damages award in excess of
$1 billion.

DISCUSSION

I.   <u>In Forma Pauperis Application</u>

        Upon review of Plaintiff's declaration in support of the
application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, the Court finds that
Plaintiff is qualified to commence this action without prepayment
of the filing fees. <u>See</u> 28 U.S.C. § 1915(a)(1). Therefore,
Plaintiff's request to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is GRANTED.

II.  <u>Application of 28 U.S.C. § 1915</u>

        Section 1915 of Title 28 requires a district court to
dismiss an <u>in</u> <u>forma</u> <u>pauperis</u> complaint if the action is frivolous
or malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who is immune

10

from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii),
1915A(b).  The Court is required to dismiss the action as soon as
it makes such a determination.  See id. § 1915A(b).

Courts are obliged to construe the pleadings of a pro se
plaintiff liberally.  See Sealed Plaintiff v. Sealed Defendant, 537
F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197,
200 (2d Cir. 2004).  However, a complaint must plead sufficient
facts to "state a claim to relief that is plausible on its face."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955,
1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.
Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).  The
plausibility standard requires "more than a sheer possibility that
a defendant has acted unlawfully."  Id. at 678; accord Wilson v.
Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011).  While
"'detailed factual allegations'" are not required, "[a] pleading
that offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do.'"  Iqbal, 556 U.S.
at  678 (quoting Twombly, 550 U.S. at 555).

III.  Section 1983

Section 1983 provides that

[e]very person who, under color of any
statute, ordinance, regulation, custom, or

11

> usage, of any State . . . subjects, or causes
> to be subjected, any citizen of the United
> States . . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983; accord Rehberg v. Paulk, --- U.S. ----, 132 S.
Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).  To state a claim
under Section 1983, a plaintiff must "'allege that (1) the
challenged conduct was attributable at least in part to a person
who was acting under color of state law and (2) the conduct
deprived the plaintiff of a right guaranteed under the Constitution
of the United States.'"  Rae v. Cnty. of Suffolk, 693 F. Supp. 2d
217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53
(2d Cir. 1999)).  The applicable statute of limitations for a
Section 1983 action is governed by "the law of the state in which
the cause of action arose."  Wallace v. Kato, 549 U.S. 384, 387,
127 S. Ct. 1091, 1094, 166 L. Ed. 2d 973 (2007).  In New York, the
general statute of limitations for personal injury claims is three
years.  See N.Y. C.P.L.R. § 214(5).

    A.   Heck v. Humphrey Bars Plaintiff's § 1983 Claims

When a claim for damages under § 1983 calls into question
the validity of an underlying conviction, a district court must
dismiss the claim, unless the conviction has been invalidated.
Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372, 129 L.
Ed. 2d 383 (1994).  The petitioner in Heck was an inmate with a
direct appeal from his conviction pending, who brought a § 1983

action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's § 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. Id. at 486-87. This favorable termination requirement is similarly applicable to a released prisoner, such as Plaintiff, seeking to bring a § 1983 action implying the invalidity of a conviction. Id. at 490, n.10. The Supreme Court in Heck enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. Id. at 486-87.

In this case, affording the pro se Complaint a liberal construction, Plaintiff arguably relies only on the first of the these methods to maintain that his conviction was invalidated.[4] Although Plaintiff's convictions for First Degree Criminal Possession of a Controlled Substance (count twelve), and three counts of Fourth Degree Criminal Possession of a Controlled

_____

[4] Method three does not apply because Judge Spatt denied Plaintiff's application for a writ of habeas corpus, see Warren v. Kelly, 207 F. Supp. 2d 6 (E.D.N.Y. 2002), and Plaintiff has not alleged that methods two and four have any application here.

Substance (counts three, six, and nine) were reversed on appeal, the Appellate Division affirmed the judgment of conviction and sentence on the remaining twelve counts, namely six counts of Third Degree Criminal Possession of a Controlled Substance (counts two, five, eight, ten, eleven, and thirteen). See People v. Warren, 323 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dept. 1996), leave to appeal denied, People v. Warren, 90 N.Y.2d 865, 683 N.E.2d 1066, 661 N.Y.S.2d 192 (1997).

For purposes of deciding the applicability of Heck here, the most informative cases are the Second Circuit's recent decision in Poventud v. City of New York, 750 F.3d 121 (2d Cir. 2014) (en banc) and DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996). In the first case, after trial, Poventud's conviction on attempted murder and related charges was vacated as a result of a collateral attack in state court. The state court found that the investigating officers failed to disclose exculpatory evidence that the key government witness and victim had mistakenly identified Poventud's brother as one of his assailants before the witness eventually identified Poventud. Poventud, 750 F.3d at 125-26. The case was remanded for a new trial; but, in order to secure his immediate release from prison, Poventud pled guilty to a reduced charge of attempted robbery, contradicting his prior alibi defense that he was not present during the alleged attack on the victim. Id. at 124, 126-27.

14

Thereafter, Poventud initiated a section 1983 action for damages against the officials who conducted the original criminal investigation, based on the <u>Brady</u> violations that tainted the first trial. The Second Circuit, reversing the district court dismissal of Poventud's civil rights action, found that Poventud's later plea to reduced charges did not warrant a <u>Heck</u> bar of his section 1983 action. Explaining that a viable <u>Brady</u> claim does not require proof of factual innocence, the Second Circuit concluded that Poventud's subsequent plea to a related, less serious offense was not inconsistent or irreconcilable with his 1983 claim predicated on the <u>Brady</u> violation in the first trial. <u>Id.</u> at 134-35, 137-38. The Second Circuit acknowledged, however, that Poventud's civil rights claim based on the <u>Brady</u> violation was inconsistent with his conviction after the first trial; but that conviction was vacated, eliminating any <u>Heck</u> problem relating to the first trial. <u>Id.</u> at 134-35, 138.

<u>DiBlasio</u> involved a physician who, in 1986, was convicted of the Criminal Sale of a Controlled Substance (cocaine) in the first, second and third degrees, and Criminal Possession of a Controlled Substance in the fourth degree. Four years later, following an unsuccessful appeal in the State courts, the United States District Court for the Eastern District of New York granted <u>DiBlasio</u> a writ of habeas corpus based on his claim that the prosecution's failure to produce or identify a confidential

informant deprived him of a fair trial. The Second Circuit affirmed. DiBlasio v. Keane, 932 F.2d 1038 (2d Cir. 1991). The State retried DiBlasio, and he was convicted only on the charge of unlawful possession. Subsequently, DiBlasio brought a malicious prosecution claim against the police officers pursuant to 42 U.S.C. § 1983. The district court dismissed the complaint as time-barred and for failure to state a claim. DiBlasio appealed.

In examining DiBlasio's malicious prosecution claim, the Second Circuit began by outlining the four elements of a common law tort for malicious prosecution: "(1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor." DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir. 1996). Turning to the question of favorable termination, the Circuit wrote: "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." Id. at 658. Ultimately, the Second Circuit rejected DiBlasio's claim because his habeas did not demonstrate his innocence; hence, his later retrial and conviction of the lesser crime of possession.

Upon careful analysis, the Court finds that Poventud is distinguishable and does not save the instant civil rights action from dismissal under Heck. Plaintiff's claims in this case are predicated on the allegation that he was unlawfully arrested and that Defendants secured his grand jury indictment, conviction, and

16

imprisonment in violation of his Constitutional rights. Those Section 1983 claims cannot be reconciled with Plaintiff's conviction on the remaining twelve counts, namely six counts of Third Degree Criminal Possession of a Controlled Substance (counts two, five, eight, ten, eleven, and thirteen). Because Plaintiff's success on his civil rights claims in this case would necessarily invalidate the conviction on these counts, none of which have been reversed or vacated, Plaintiff's Section 1983 claims are not cognizable under Heck. Like in DiBlasio, Plaintiff's conviction was not vacated in its entirety. Rather, Plaintiff's conviction was vacated on just four counts of the sixteen-count indictment. Thus, because success on Plaintiff's Section 1983 claims would implicate the validity of the remaining convictions, Heck's bar precludes their adjudication.[5] Accordingly, Plaintiff's Section 1983 claims are not plausible and are thus DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). See Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006) ("allegations of extensive conspiratorial misconduct between defense counsel and the prosecution would render the [plaintiff's] convictions invalid if they were proved" and thus are barred by Heck.); Whaley v. Lopez, 12-CV-2889, 2012 WL 3137900, at

---

[5] Although "§ 1983 remains a possible remedy when there is no other federal avenue to bring a claim", Chillemi v. Town of Southampton, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff had the opportunity to--and did--seek habeas relief. See Warren, 207 F. Supp. 2d at *11 (denying petition for a writ of habeas corpus brought under § 2254).

*7 (E.D.N.Y. July 30, 2012) (citing <u>Kevilly v. New York</u>, 410 F. App'x 371, 374 (2d Cir. 2010) (prosecutorial misconduct claim is barred because such conduct necessarily implies invalidity of the conviction)).[6]

> B. <u>Section 1983 Claims Against Judge Berkowitz[7], Muraskin and Legal Aid</u>

Although Plaintiff's claims seeking to impose Section 1983 liability on Judge Berkowitz, Muraskin, and Legal Aid are barred by <u>Heck</u>, such claims are not plausible for the additional reason that these Defendants are not state actors. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" <u>Hooda v. Brookhaven Nat'l Lab.</u>, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 837, 102 S. Ct. 2764, 2769, 73 L. Ed. 2d 418 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." <u>Flagg v. Yonkers Sav. & Loan Ass'n</u>, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted); <u>Fabrikant v. French</u>, 691 F.3d 193, 206 (2d Cir. 2012) ("A

---

[6] Although statute of limitation is an affirmative defense, the Court notes that most of the challenged conduct is alleged to have occurred in the early 1990s with the most recent act allegedly occurring in 2011 (Compl. ¶ 51), all well outside the three-year statute of limitation.

[7] The Court notes that the allegations against Judge Berkowitz relate only to her conduct in 1994 when she was Plaintiff's criminal defense attorney and was employed by Legal Aid. (Comp. at ¶ 11.)

plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999) (internal quotation marks and citation omitted).

Private actors, such as Berkowitz, Muraskin, and Legal Aid, may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was a "'willful participant in joint activity with the State or its agents.'" Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1606, 26 L. Ed. 2d 142 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. Ciambriello, 292 F.3d at 323-24. In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Id. at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). Indeed, "[a] merely conclusory allegation that a private entity acted in concert with

a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello, 292 F.3d at 324 (internal quotation marks omitted).

Here, Plaintiff alleges that Muraskin and/or Legal Aid are liable for his claimed Constitutional deprivations simply because Muraskin was Berkowitz's supervisor and Legal Aid was her employer. Attorneys, whether with the Legal Aid Society, court-appointed, or privately retained, are generally not state actors for purposes of Section 1983. See, e.g., Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 453, 70 L. Ed. 2d 509 (1981); see also Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); there is no respondent superior liability under Section 1983. Iqbal, 556 U.S. at 676 ("[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010). Thus, Plaintiff has not alleged a plausible Section 1983 claim against

Muraskin or Legal Aid and such claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

Additionally, Plaintiff has not sufficiently alleged that Berkowitz acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right. Although Plaintiff suggests that his Legal Aid attorney, Berkowitz, conspired with a state court judge to pursue his illegal prosecution, his merely conclusory allegations with no supporting factual averments are insufficient to state a conspiracy. Thus, in the absence of any state action, Plaintiff's Section 1983 claim against Berkowitz is not plausible as a matter of law. Ciambriello, 292 F.3d at 325. Moreover, though far from clear, to the extent Plaintiff seeks to assert a cause of action against Berkowitz based on the ineffective assistance of counsel, "an ineffectiveness [claim is not actionable] in a proceeding brought under § 1983." Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004). Accordingly, Plaintiff's Section 1983 claim against Berkowitz is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV. Plaintiff's RICO Claims

A. Judge Jonas, Judge Kowtna, Judge Sullivan, and Judge Winnick are Immune From Such Claims

Plaintiff's remaining claims against Judges Jonas, Kowtna, Sullivan, and Winnick are subject to dismissal because these Defendants, all of whom are judges employed by the state

court, are absolutely immune from suit.  It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities.  Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991)).  This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted (ellipsis in original)).

Rather, judicial immunity is overcome in only two instances.  The first is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11).  The second is liability arising from actions taken "'in the complete absence of all jurisdiction.'" Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (emphasis in the original) (quoting Mireles, 502 U.S. at 11-12).  Here, nothing in Plaintiff's Complaint suggests that either exception applies to overcome absolute judicial immunity.  Although Plaintiff complains that the judges acted without jurisdiction, such allegation is belied by the fact that he was tried and convicted in the state court, and such conviction was, in large part, affirmed on appeal.  See People v. Warren, 323 A.D.2d 589, 648 N.Y.S.2d 670 (2d Dept. 1996), leave to appeal denied, People v.

Warren, 90 N.Y.2d 865, 683 N.E.2d 1066, 661 N.Y.S.2d 192 (1997). There can be no doubt that state court prosecution for violations of state law relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Plaintiff's claims against Judges Jonas, Kowtna, Sullivan, and Winnick are not plausible as a matter of law and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii)-(iii).

      B.    <u>Plaintiff has not Adequately Alleged RICO Claims Against the Remaining Defendants</u>

      Plaintiff also alleges that Defendants have violated his rights under RICO. RICO makes it a crime to conduct "an enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "18 U.S.C. § 1964(c) provides a private right of action for '[a]ny person injured in his business or property by reason of a violation of Section 1962.'" <u>Goldfine v. Schienzia</u>, 118 F. Supp. 2d 392, 399 (S.D.N.Y. 2000), quoting 18 U.S.C. § 1964(c) (emphasis omitted). The statute of limitations for a civil RICO claim under 18 U.S.C. § 1964(c) is four years. <u>Frankel v. Cole</u>, 313 F. App'x 418, 419 (2d Cir. 2009) (citing <u>Agency Holding Corp. v. Malley-Duff & Assocs.</u>, 483 U.S. 143, 156, 107 S. Ct. 2759, 2767, 97 L. Ed. 2d 121 (1987)). The statute of limitations "'begins to run when the plaintiff discovers or should have discovered the RICO injury.'" <u>Frankel</u>, 313 F. App'x at 419 (quoting <u>In re Merrill Lynch, Ltd. P'Ships Litig.</u>, 154 F.3d 56, 58

(2d Cir. 1998) (per curiam)).

Here, given that Plaintiff was convicted in 1994, his alleged RICO injury occurred well outside the four-year statutory period. Even accepting Plaintiff's allegation that the most recent action undertaken as part of the conspiracy occurred on April 21, 2011 (Compl. ¶ 51), it too is outside the statutory period given Plaintiff's filing of this Complaint on May 12, 2015. Thus, Plaintiff's RICO claims are clearly time-barred.

Moreover, Plaintiff's RICO claims are not plausible because wholly absent from the Complaint are any factual allegations that any of the Defendants received money from racketeering activities, had an interest in an enterprise engaged in racketeering, or conspired to violate Section 1962. Plaintiff does not allege any facts which would support an inference that Defendants were engaged in racketeering activity or involved in an enterprise which affects interstate or foreign commerce. Thus, even construing Plaintiff's Complaint liberally, there is no factual or legal basis for a RICO claim. In the absence of any such allegations, together with the unexplained twenty-year delay in bringing such claims, Plaintiff's RICO claims are not plausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Leave to Amend

Given the Second Circuit's guidance that a pro se

24

complaint should not be dismissed without leave to amend unless amendment would be futile, <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here.  Because the defects in Plaintiff's claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is DENIED.

CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is GRANTED, however the Complaint is <u>sua</u> <u>sponte</u> DISMISSED WITH PREJUDICE for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is DENIED for the purpose of any appeal.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and to mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERTS
Joanna Seybert, U.S.D.J.

Dated:  November __5__, 2015
        Central Islip, New York